

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00382-CV

## IN RE THE TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES

Original Proceeding[1]

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:       Luz Elena D. Chapa, Justice
               Irene Rios, Justice
               Lori I. Valenzuela, Justice

Delivered and Filed: August 23, 2023

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED IN PART, DENIED IN PART

J.D. is the sixteen-year-old child at the center of this case who has been in the managing conservatorship of relator, the Department of Family and Protective Services (the "Department"), since June 29, 2021. The Department challenges multiple trial court orders regarding the Department's actions as managing conservator. We conditionally grant the petition for writ of mandamus in part and deny in part.

## MANDAMUS STANDARD OF REVIEW

To be entitled to mandamus relief, the Department must show the trial court committed a clear abuse of discretion, and it has no adequate remedy by appeal. *In re Ford Motor Co.*, 165

---

[1] This proceeding arises out of Cause No. 2020-PA-01945, styled *In the Interest of J.D., a Child*, pending in the 150th Judicial District Court, Bexar County, Texas, the Honorable Mary Lou Alvarez presiding.

S.W.3d 315, 317 (Tex. 2005) (orig. proceeding) (per curiam). A trial court abuses its discretion if "'it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law'" or if it clearly fails to correctly analyze or apply the law. *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding) (citation omitted). A "mandamus will not issue when the law provides another plain, adequate, and complete remedy." *In re Tex. Dep't of Fam. & Protective Servs.*, 210 S.W.3d 609, 613 (Tex. 2006) (orig. proceeding). However, if the complained-of order is void, the Department does not have to show a lack of an adequate appellate remedy for mandamus relief to be appropriate. *See In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding) (per curiam). "A judgment is void only when it is apparent that the court rendering judgment 'had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court.'" *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex. 1987) (citation omitted).

## BACKGROUND

On June 29, 2021, the trial court terminated the rights of J.D.'s parents, and it named the Department J.D.'s permanent managing conservator. Beginning in April 2023, the trial court began to issue several orders followed by many challenges by the Department. On April 18, 2023, the trial court conducted a hearing regarding J.D.'s placement and ordered in part as follows:

> 2.2. Child Specific Contract to be negotiated by tomorrow morning.
>
> 2.3. CPS is ordered to secure 2 nannies, with no less than a bachelor's degree, to be dedicated to the child from 7 [a.m.] to 7 [p.m.], 7 days a week; the nannies shall have experience with child medications prescription and can make sure the child takes his medications as prescribed, nannies also to take child to school;
>
> 2.4. The name of the nannies and contact information is to be filed with the court and circulated to attorneys and CASA by 8:00 a.m. tomorrow morning;
>
> 2.5. Private tutoring to be secured for child, when he does not go to school, wherever the child resides;

    2.6. The child is to meet with a therapist, specialized in addressing, intervening and correcting sexual maladaptive behaviors in teens. The therapist to make contact with child no later than 8 [p.m.] 4/19/2023. The meeting is to be in person at child's hotel. Identity and contact information for therapist to be provided by tomorrow.

    2.7. While in unlicensed placement, child to be monitored 24/7 by no less than 3 adults who are to follow child around, to start tonight, 4/18/2023 at 8 p.m. The monitors are to be in shape to be able to follow the child, wherever child goes[.]

On April 19, 2023, relator filed a petition for writ of mandamus complaining of the April 18 order. Relator also filed an emergency motion asking this court to stay: the April 18 order, along with any further orders regarding provision of services and the immediate execution of a child specific contract for this child, and a stay of any contempt proceedings, sanctions, or any enforcement action of an order issued by the trial court.

On April 19, 2023, the trial court conducted a hearing and ordered in part as follows:

    2.1. CPS employees Ms. Gallegos and Ms. Mack are ordered to appear in person for a hearing at 1:30 [p.m.] on 4/20/2023 to testify about highest rate contract paid by CPS in the last 6 months for high acuity youth;

On April 20, 2023, relator filed an amended petition and emergency motion, seeking to stay the trial court's April 19, 2023 order ("April 19 order") and the April 18 order. On April 21, 2023, this court granted the stay motion as to paragraphs 2.2–2.7 of the April 18 order and as to paragraph 2.1 of the April 19 order.[2]

---

[2] After we issued our stay order, the trial court slightly modified the language in its April 18, 2023 order, but the order is substantially the same. The modified order provides as follows:

    2.2. It is ordered that a Child Specific Contract be negotiated by 4/19/2023;

    2.3. CPS is ordered to secure 2 nannies to watch the child from 7 a.m. to 7 p.m., 7 days a week. Nannies shall have no less than a bachelor's degree or higher, and shall have experience with a child prescribed up to 6 psychotropic medications. The nannies shall also have experience with child medications prescription and can make sure the child takes his medications as prescribed. The nannies shall have the ability to get the child to school beginning tomorrow morning, 4/19/2023, at 7:00 a.m.;

    2.4. The name of the nannies and contact information is to be filed with the court and circulated to attorneys and CASA by no later than 8:00 a.m. on 4/19/2023;

On May 8, 2023, the trial court conducted another hearing regarding J.D.'s placement and ordered in part as follows:

>   2.1 IT IS ORDERED THAT not later than 6:00 p.m. on 5/9/2023 CPS shall financially reward the child in the amount of $175.00 dollars, $25.00 for every day the child was willing to go to school and could not attend. The child is to spend the money on clothes, shoes, books and accessories;
>
>   2.2 IT IS FURTHER ORDERED THAT by 5/17/2023 CPS shall facilitate tutoring for the child to make up for any hours missed by the child during the week he missed school;
>
>   . . .
>
>   2.7 IT IS FURTHER ORDERED THAT by 10:00 a.m. on 5/9/2023 the CPU team shall be engaged to conduct an extensive search for placement for the child, before the placement search is referred to the Child Specific Contract team;
>
>   2.8 IT IS FURTHER ORDERED THAT by no later than noon on 5/9/2023 CPS shall refer the placement search to the Child Specific Contract team;
>
>   2.9 IT IS FURTHER ORDERED THAT CPS shall find a placement for the child that shall commit not to provide a discharge notice for the child until 12/31/2023;
>
>   2.10 IT IS FURTHER ORDERED THAT CPS by noon on 5/15/2023 shall identify the next licensed placement for the child;
>
>   2.11 IT IS FURTHER ORDERED THAT CPS, and the attorney and/or the guardian ad litem for the child shall inspect, in person, the next licensed placement by 5/18/2023[.]

On May 11, 2023, relator filed a "second motion for temporary emergency relief" seeking a stay of the trial court's May 8 order paragraphs 2.1–2.2 and 2.7–2.11. Relator also filed a "motion for

---

2.5. Private tutoring to be secured for child, when he does not go to school, wherever the child resides;

2.6. CPS is ordered to ensure the child is to meet with a therapist, specialized in addressing, intervening and correcting sexual maladaptive behaviors in teens. The therapist to make contact with child no later than 8 [p.m.] 4/19/2023. The meeting is to be in person at child's hotel, or whatever [sic] he is being held. It is further ordered that CPS shall provide the identity and contact information for therapist to all attorneys of record by tomorrow 4/19/2023;

2.7. While in unlicensed placement, child to be monitored 24/7 by no less than 3 adults who are to follow child around, to start tonight, 4/18/2023 at 8 p.m. The monitors are to be in shape to be able to follow the child, wherever child goes [.]

review of further orders and motion to enforce the stay," seeking our review of the May 8 order and our enforcement of our April 21, 2023 stay order, by holding the trial court's May 8 order void. We granted the motion to stay the May 8 order paragraphs 2.1–2.2, 2.7–2.10, granted mandamus review of the May 8 order, and held the enforcement motion in abeyance.

On May 15, 2023, the trial court conducted a hearing regarding J.D.'s placement and ordered in part as follows:

> 2.2 IT IS FURTHER ORDERED THAT CPS shall not allow the child to be without placement[.]

On May 18, 2023, the trial court conducted a hearing and ordered in part as follows:

> 2.1 Petitioner's oral motion for the Court to reconsider the 5/15/2023 order that "CPS shall not allow the child to be without placement" was denied.

On May 22, 2023, relator filed a "second motion to enforce stay orders and third motion for temporary emergency relief," seeking, among other things, a stay of the May 15 order and May 18 order and enforcement of this court's previous stay orders. We granted the motion to stay as to paragraphs 2.2 of the May 15 order and 2.1 of the May 18 order and held the enforcement motion in abeyance.

On June 20, 2023, the trial court conducted another hearing regarding J.D.'s placement and ordered in part as follows:

> 2.12 IT IS FURTHER ORDERED THAT CPS shall not take the child to another hotel;
>
> . . .
>
> 2.14 IT IS FURTHER ORDERED THAT CPS shall have the child in a licensed placement by Monday, June 26, 2023[.]

On June 22, 2023, the trial court conducted another hearing and ordered in part as follows:

> 3.2 IT IS FURTHER ORDERED THAT the Department shall not allow the child to be without placement[.]

On June 22, 2023, relator filed a "third motion to enforce stay orders and fourth motion for temporary emergency relief," and amended the motion on June 23, 2023 (the "June 23 motions"). In the June 23 motions, the Department sought a stay of paragraphs 2.12, 2.14 of the June 20 order and paragraph 3.2 of the June 22 order and consideration of all enforcement action because of the trial court's continued, knowing violations of this court's stay orders. We granted the stay as to paragraphs 2.12 and 2.14 of the June 20 order and paragraph 3.2 of the June 22 order and held the enforcement motion in abeyance.

On June 26, 2023, the trial court conducted a hearing regarding J.D.'s placement and ordered in part as follows:

> 3.1     IT IS ORDERED THAT all attorneys of record, including: attorneys representing the Department, the child's Attorney Ad Litem, the child's Guardian Ad Litem, the child's criminal attorney, the child's appellate attorney, are to prepare a report for the Federal court monitors for Judge Jack. The report is to include everything that has happened to this child since April 1, 2023, including, but not limited to: the lack of licensed placement, lack of providing daily psychotropic medication, lack of supervision, the outcry of sexual abuse that has befallen the youth while without placement and lack of educational resources and anything else that has occurred. The report and the date it was provided to the Federal court monitors along with whom the report was provided is to be efiled to this Court by Friday, June 30, 2023 at 5:00p.m[;]
>
> 3.2     IT IS FURTHER ORDERED THAT the Department shall subpoena all records for the child from Sun Behavioral[.]

On June 28, 2023, relator filed a "supplemental petition for writ of mandamus," requesting this court vacate paragraphs 3.1 and 3.2 of the June 26 order. The Department concurrently filed its "fourth motion to enforce stay orders and fifth motion for temporary emergency relief," seeking, among other things, a stay of paragraphs 3.1 and 3.2 of the trial court's June 26 order and consideration of all enforcement action because of the trial court's continued, knowing violations

of this court's stay orders. We granted the motion to stay as to paragraphs 3.1 and 3.2 of the trial court's June 26 order and held the enforcement motion in abeyance.

This court requested respondent file a response to the mandamus petition and the supplemental mandamus petition, but respondent never filed one.[3]

**DISCUSSION**

**A. Law**

The Department argues the trial court abused its discretion when it ordered the Department to provide certain services and enter into various contractual obligations regarding J.D. because the orders violated the Separation of Powers Clause of the Texas Constitution. In *In re the Texas Department of Family & Protective Services*, we considered whether the trial court had the authority to render an order requiring the Department to enter a child-specific contract for foster care at a specific daily rate. 660 S.W.3d 161, 164 (Tex. App.—San Antonio Jun. 1, 2022, orig. proceeding). The order at issue required the Department to submit a $2,000 written offer for a child specific contract to specified service providers, including an additional $500-per-day subsidy for the first nine months of placement for a licensed professional counselor. *Id.*

After a review of the separation of powers doctrine, we considered the powers vested in the judiciary and executive (the Department) branches. We explained "[t]he trial court's statutory power in this case derives from the Texas Family Code. When the trial court entered the final order terminating the parental rights of [the child's] biological parents and establishing the Department as the permanent managing conservator, the court acquired continuing jurisdiction over [the child]

---

[3] On July 10, 2023, Attorney Ad Litem for the Child Alana Pearsall filed a "Response in Opposition to Amended Motions to Enforce Stay Orders and Motions for Temporary Emergency Relief."

and retained the power to make future modifications to its order." *Id.* at 168 (citing TEX. FAM. CODE §§ 155.001-.003).

We further noted the permanency hearing—which takes place after parental rights have been terminated and the Department has been appointed permanent managing conservator—is conducted pursuant to the trial court's statutory powers in chapter 263 of the Family Code. *Id.* Specifically, the trial court must conduct an initial permanency hearing ninety days after termination and "continue to hold additional permanency hearings thereafter every six months until the child is no longer in the managing conservatorship." *Id.* (citing TEX. FAM. CODE 263.501(b)) (citation omitted). During these hearings, the trial court "shall review the permanency progress report" to determine the safety and well-being of the child and whether the child's needs are being adequately addressed. *Id.* at 169 (quoting TEX. FAM. CODE § 263.5031(a)(4)) (internal quotation marks omitted). *See generally* TEX. FAM. CODE § 263.5031(a)(4). We further explained the trial court has the inherent power to "ensure the proper administration of justice" and specifically to act in the child's best interest. *Id.*

In contrast to the trial court, the Department's powers are those "expressly conferred by the Legislature" and "implied powers that are reasonably necessary to carry out the express responsibilities given to [the Department] by the Legislature." *Id.* at 170. We explained these include the legislatively-granted authority to negotiate and execute contracts necessary 'to perform any of the [D]epartment's powers or duties.'" *Id.* (alteration in original) (quoting TEX. HUM. RES. CODE § 40.058(a)). Department contracts must include the following provisions:

> (1) enable the [D]epartment and commission to monitor the effectiveness of the services;
>
> (2) specify performance outcomes, financial penalties for failing to meet any specified performance outcomes, and financial incentives for exceeding any specified performance outcomes;

(3) authorize the [D]epartment or commission to terminate the contract or impose monetary sanctions for a violation of a provision of the contract that specifies performance criteria or for underperformance in meeting any specified performance outcomes;

(4) authorize the [D]epartment or commission, an agent of the department or commission, and the state auditor to inspect all books, records, and files maintained by a contractor relating to the contract; and

(5) are necessary, as determined by the [D]epartment or commission, to ensure accountability for the delivery of services and for the expenditure of public funds.

*Id.* at 170-71 (alteration in original) (quoting TEX. HUM. RES. CODE § 40.058(f)) (internal quotation marks omitted).

We acknowledged while the trial court was entitled to review permanency progress reports, "absent from section 263.5031(4) is an avenue whereby a court may impose specific contractual obligations on the Department following the court's review of the permanency progress report"— a power legislatively delegated to the Department. *Id.* at 171. The trial court has a duty to review activities affecting the child, not restricted by the Department's choices. *Id.* However, the trial court's authority "is not boundless." *Id.* The trial court "'may not usurp legislative authority by substituting its policy judgment for that of the [Department] acting as a legislative body.'" *Id.* (alteration in original) (quoting *Henry v. Cox*, 520 S.W.3d 28, 37 (Tex. 2017)). We also explained "the Legislature has vested in the Department the authority to enter into child-specific contracts at legislatively determined rates." *Id.* at 172. We therefore concluded the trial court unduly interfered with the powers of the legislative branch when it ordered the Department to submit these written offers to specific child-placing agencies at specified rates. *Id.* at 171-72.

We applied these legal principles in a series of original proceedings filed by the Department against the respondent in 2022. *See, e.g.*, *In re Tex. Dep't of Fam. & Protective Servs.*, No. 04-22-00166-CV, 2022 WL 3372425 (Tex. App.—San Antonio Aug. 17, 2022, orig. proceeding) (mem. op.) (vacating as void order provision requiring Department to enter child specific contract and

hold staffings with certain placements); *In re Tex. Dep't of Fam. & Protective Servs.*, No. 04-22-00094-CV, 2022 WL 3219924 (Tex. App.—San Antonio Aug. 10, 2022, orig. proceeding) (mem. op.) (vacating as void order provision requiring Department to offer child specific contract at specified rate); *In re Tex. Dep't of Fam. & Protective Servs.*, No. 04-22-00087-CV, 2022 WL 3219596 (Tex. App.—San Antonio Aug. 10, 2022, orig. proceeding) (mem. op.) (vacating as void order provision requiring Department to draft child specific contract at specified rate); *In re Tex. Dep't of Fam. & Protective Servs.*, No. 04-22-00085-CV, 2022 WL 2820937 (Tex. App.—San Antonio July 20, 2022, orig. proceeding) (mem. op.) (vacating as void order provisions requiring Department to "work up" child specific contract and reach out to certain third-party providers to see if they had any contact with child); *In re Tex. Dep't of Fam. & Protective Servs.*, No. 04-22-00091-CV, 2022 WL 2230720, at *1 (Tex. App.—San Antonio June 22, 2022, orig. proceeding) (mem. op.) (vacating as void order provision requiring Department to send letter of intent to enter into child specific contract at specified rate); *In re Tex. Dep't of Fam. & Protective Servs.*, No. 04-22-00092-CV, 2022 WL 2230719, at *1 (Tex. App.—San Antonio June 22, 2022, orig. proceeding) (mem. op.) (vacating as void order provision requiring Department to enter into child specific contract at specified rate); *In re Tex. Dep't of Fam. & Protective Servs.*, No. 04-22-00165-CV, 2022 WL 2135534 (Tex. App.—San Antonio June 15, 2022, orig. proceeding) (mem. op.) (vacating as void order provision requiring Department to find and negotiate child specific contract at specified rate).

## B. Analysis

### 1. The April 18 and 19 Order Provisions

Addressing the challenged orders here, on April 18, 2023, the trial court ordered the Department, by a specified time, to (1) negotiate a child specific contract; (2) secure for the child two nannies and a therapist with specific experience; (3) secure private tutoring for the child when

the child is not in school; and (4) monitor the child's whereabouts with "in shape" adults capable of following the child. For the reasons explained above, the trial court's order requiring the Department to negotiate a child-specific contract violates the Separation of Powers Clause, incorrectly analyzes or misapplies the law, and is void. *See Tex. Dep't of Fam. & Protective Servs.*, 660 S.W.3d at 170, 172.

Turning to the trial court's nannies, therapist, and tutoring orders, we considered a similar issue in our August 3, 2022 decision granting a previous mandamus petition filed by the Department. *In re Tex. Dep't of Fam. & Protective Servs.*, 660 S.W.3d 175, 177 (Tex. App.—San Antonio 2022, orig. proceeding). There, we addressed whether the trial court's order requiring "the Department to provide 'an autism expert on site designated to be working . . . for all shifts mornings, evenings and night'" violated the Separation of Powers Clause of the Texas Constitution. *Id*. Applying the legal principles identified in our June 1, 2022 decision, we concluded the trial court's order did violate the Separation of Powers Clause and was void. *Id.* at 178 (citing *Tex. Dep't of Fam. & Protective Servs.*, 660 S.W.3d at 167–68, 172–73). Accordingly, applying the same principles, we hold paragraphs 2.3–2.6 of the April 18, 2023 order violate the Separation of Powers Clause and are void. *See, e.g.*, *Tex. Dep't of Fam. & Protective Servs.*, 660 S.W.3d 248, 257 (Tex. App.—San Antonio 2022, orig. proceeding); *In re Tex. Dep't of Fam. & Protective Servs.*, No. 04-22-00196-CV, 2022 WL 2442169, *5–*6 (Tex. App.—San Antonio July 6, 2022, orig. proceeding) (mem. op.); *Tex. Dep't of Fam. & Protective Servs.*, 660 S.W.3d at 178; *Tex. Dep't of Fam. & Protective Servs.*, 660 S.W.3d at 167–68, 172–73.

Turning to the trial court's order requiring the Department to monitor the child's whereabouts with "in shape" adults, our July 6, 2022 decision granting a previous mandamus petition filed by the Department is instructive. *Tex. Dep't of Fam. & Protective Servs.*, 2022 WL 2442169. In the July 6, 2022 decision, we considered whether the trial court violated the Separation

of Powers Clause of the Texas Constitution when it ordered the Department to discharge a caseworker from a case effective immediately and required the Department to file a corrective action plan for the discharged caseworker. *Id.* at *5. We explained the trial court was entitled to review permanency progress reports "to determine (A) the safety and well-being of the child and whether the child's needs, including any medical or special needs, are being adequately addressed; . . . (C) . . . whether the placement continues to be in the best interest of the child;' and other factors." *Id.* (Tex. Fam. Code § 263.5031(a)(4)) (internal quotation marks omitted). However, "the legislature expressly gave the Department discretion to hire and evaluate its personnel," and we found "no authority in the Family Code authorizing a trial court to impose specific personnel requirements on the Department following its review of a permanency progress report." *Id.* at *5-*6. Accordingly, we hold paragraph 2.7 of the April 18, 2023 order violates the Separation of Powers Clause and is void. *See id.*

Because we hold paragraphs 2.2–2.7 of the trial court's April 18, 2023 order are void, the Department does not need to show it lacked an adequate appellate remedy to be granted mandamus relief. *Tex. Dep't of Fam. & Protective Servs.*, 660 S.W.3d at 172–73.[4]

### 2. The May 8 Order

On May 8, 2023, the trial court ordered the Department to: (1) secure private tutoring for the child if the child is not in school by May 17, 2023; (2) conduct an extensive placement search for the child by May 9, 2023; (3) find a placement willing to keep the child through the end of

---

[4] As to paragraph 2.1 in the trial court's April 19, 2023 order, we have considered the petition, the response, and the record and conclude the Department is not entitled to the relief sought as to that paragraph. *See* Tex. R. App. P. 52.8(a); *see In re Tex. Dep't of Fam. & Protective Servs.*, No. 04-22-00163-CV, 2022 WL 2821251, at *2 (Tex. App.—San Antonio July 20, 2022, orig. proceeding) (mem. op.) (providing "Texas courts have recognized" a trial court's inherent power "to summon and compel the attendance of witnesses").

2023 and identify the next such placement by May 15, 2023; and (4) financially reward the child $175 by May 9, 2023 for missed school days.

Turning to the provision directing the Department to find a placement willing to keep the child through the end of 2023, the trial court ordered as follows:

> The Department is ordered to find a placement for this child, a licensed placement for this child that shall commit to providing no discharge notice for this child until December 31st, 2023. . . . So the Department is ordered to negotiate whatever contract they are going to negotiate to make sure that the child's needs regarding stability of licensed placement are met.

Because the trial court's order was for the purpose of requiring the Department to negotiate a specific agreement, it is void as a violation of the Separation of Powers Clause under the Texas Constitution.[5] *Id.* at 170 (providing Department had legislatively-granted authority to negotiate and execute contracts necessary 'to perform any of the [D]epartment's powers or duties.'" (alteration in original) (quoting TEX. HUM. RES. CODE § 40.058(a))).[6]

### 3. The June 26 Order

On June 26, 2023, the trial court ordered the Department to prepare and submit a report to federal monitors on the child in an ongoing unrelated federal lawsuit and subpoena the child's records from Sun Behavioral.

In our July 20, 2022 decision granting a previous mandamus petition filed by the Department, we considered a similar issue. *Tex. Dep't of Fam. & Protective Servs.*, 2022 WL

---

[5] The trial court's order requiring private tutoring is void for the same reasons paragraph 2.5 of the April 18, 2023 order is void.

[6] As to paragraphs 2.1, 2.7, 2.8, and 2.10 in the trial court's May 8, 2023 order, we have considered the petition, the motion to review further orders, the response, and the record and conclude the Department is not entitled to the relief sought as to those paragraphs. *See* TEX. R. APP. P. 52.8(a); *Ford Motor Co.*, 165 S.W.3d at 317 (providing to be entitled to mandamus relief, Department must show trial court committed clear abuse of discretion and Department has no adequate remedy by appeal); *see Tex. Dep't of Fam. & Protective Servs.*, 660 S.W.3d at 173 (vacating as void order provision violating Separation of Powers doctrine); *Texas Dep't of Fam. & Protective Servs.*, 660 S.W.3d at 257 (same).

2821251. There, the issue was whether the trial court's decision to order the Department to conduct discovery—specifically, to secure and pay a court reporter for the depositions of J.D.'s four supervisors—was proper. *Id.* We explained there was no "specific statutory basis either expressly or impliedly authorizing the depositions." *Id.* at *3. We further explained the discovery order was also not supported by the trial court's inherent power "(1) to change, set aside or otherwise control their judgments; (2) to summon and compel the attendance of witnesses; (3) to regulate the admission and practice of law; and (4) to provide personnel to aid the court in the exercise of its judicial function." *Id.* Because the trial court lacked the authority to order discovery and the Department lacked an adequate remedy by appeal, we held the orders void. *Id.* (providing improper discovery order cannot be rectified on appeal (citing *In re Liberty Cnty. Mut. Ins. Co.*, 557 S.W.3d 851, 858 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding))).

The same principles apply here. *See id.* The trial court's order identifies no statutory or inherent authority authorizing it to sua sponte order the Department to engage in discovery. *See id.*; *see also Tex. Dep't of Fam. & Protective Servs.*, 660 S.W.3d 170-71 (providing legislatively-granted authority to Department to ensure all contracts included financial penalties for failing to meet any specified performance outcomes, authorization for Department to terminate contracts or impose monetary sanctions for contract provision violations, authorization for Department to inspect all books, records, and files maintained by contractor relating to contract; and any other necessary provisions determined by Department (citing TEX. HUM. RES. CODE § 40.058(f)). Accordingly, the trial court's order is a clear abuse of discretion, and the Department lacks an adequate remedy by appeal from the trial court's sua sponte discovery order.

## CONCLUSION

The trial court lacked the authority to order the Department on April 18, 2023 to comply with the requirements of paragraphs 2.2–2.7 of its order, and specifically to: (1) negotiate a "Child

Specific-Contract"; (2) "secure 2 nannies"; (3) secure "private tutoring"; (4) secure "a therapist, specialized in addressing, intervening and correcting sexual maladaptive behaviors in teens," and (5) have the child "monitored 24/7 by no less than 3 adults who are to follow child around" and are "to be in shape."

The trial court lacked the authority to order the Department on May 8, 2023 to comply with the requirements of paragraphs 2.2 and 2.9, and specifically to: (1) "facilitate tutoring" for missed school days; and (2) "find a placement for the child that shall commit not to provide a discharge notice for the child until 12/31/2023." Finally, the trial court lacked the authority to order the Department on June 26, 2023 to comply with the requirements of paragraphs 3.1 and 3.2, and specifically to: (1) "prepare a report for the Federal court monitors for Judge Jack" and provide the trial court with "the report and the date it was provided to the Federal court monitors along with whom the report was provided"; and (2) "subpoena all records for the child from Sun Behavioral."

Therefore, we hold void each of: (1) paragraphs 2.2–2.7 of the April 18, 2023 order; (2) paragraphs 2.2 and 2.9 of the May 8, 2023 order; and (3) paragraphs 3.1 and 3.2 of the June 26, 2023 order.[7] Accordingly, the Department need not show a lack of an adequate remedy by appeal for mandamus relief. *See Tex. Dep't of Fam. & Protective Servs.*, 660 S.W.3d at 173.

We conditionally grant the Department's petition for writ of mandamus as to (1) paragraphs 2.2–2.7 of the April 18, 2023 order; (2) paragraphs 2.2 and 2.9 of the May 8, 2023 order; and (3) paragraphs 3.1 and 3.2 of the June 26, 2023 order. We deny the petition, motion to

---

[7] We further hold the trial court abused its discretion by ordering the Department to comply with paragraphs 3.1 and 3.2 of the June 26, 2023 order, and the Department has no adequate remedy by appeal as to those order provisions. *See Tex. Dep't of Fam. & Protective Servs.*, 2022 WL 2821251, at *3.

review further orders, and supplemental petition as to all other paragraphs. *See* TEX. R. APP. P. 52.8. All other relief requested by the Department by motion, and not granted, is denied.

We direct the trial court to, no later than fifteen days from the date of this opinion, vacate paragraphs 2.2–2.7 of the April 18, 2023 order, paragraphs 2.2 and 2.9 of the May 8, 2023 order, and paragraphs 3.1 and 3.2 of the June 26, 2023 order. We are confident the trial court will promptly comply; our writ will issue only if it does not.

Luz Elena D. Chapa, Justice